# IN THE COURT OF APPEALS OF IOWA

No. 23-0111
Filed May 24, 2023

IN THE INTEREST OF J.R. and J.R.,
Minor Children,

E.R., Mother,
    Appellant.
_____

Appeal from the Iowa District Court for Scott County, Korie Talkington, District Associate Judge.

A mother appeals the termination of her parental rights to two children. **AFFIRMED.**

Grishma Arumugam, Davenport, for appellant mother.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Rebecca Sharpe, Bettendorf, attorney and guardian ad litem for minor children.

Considered by Schumacher, P.J., Chicchelly, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**BLANE, Senior Judge.**

A mother appeals the termination of her parental rights to two children, ages seven and ten. She challenges the statutory grounds for termination, argues the State failed to make reasonable efforts to reunite the family, and contends it was not in the children's best interests to terminate her rights. Because of ongoing substance-abuse issues and a history of emotionally harmful behavior by the mother, and despite the State's reasonable efforts, we find termination was supported and in the children's best interests. We affirm.

## I.  FACTS AND PRIOR PROCEEDINGS

The mother[1] and her children came to the Iowa department of health and human service's attention in January 2020 when she and her paramour were suspected of using cocaine and marijuana in the home. The department left the children in the home with voluntary services. Thereafter, the mother and her paramour missed three drug tests. The children also disclosed that the paramour had sexually abused them, so the children were interviewed at the child protection response center (CPRC). As a result, in April 2021, they were removed from the home and placed in family foster care. Since their removal they have continuously remained with the same foster family.

For the rest of 2021, the mother struggled to maintain her sobriety. She completed a substance-abuse treatment program, but then tested positive for cocaine in August 2022. And she missed many drug tests without explanation. She also repeatedly admitted to drinking and associating with inappropriate

---

[1] The father did not participate in these proceedings, and his parental rights were also terminated. He does not participate in this appeal.

people, sometimes letting them live in her home regardless of the safety risks to herself and the children.[2]

The department was also concerned that the mother continued to live with her paramour for several months after the children's disclosure of sexual abuse. Eventually, she moved to a different apartment in the same complex. The paramour died unexpectedly in January 2022. But even after his death, the mother refused to believe the sexual assault accusations and did not understand that her continuing support for the paramour was emotionally harmful to the children, manifesting in the children acting out after visitations.[3] She insisted on watching the CPRC interviews and continued to disbelieve the disclosures. On the final day of her termination trial, she offered conflicting testimony but ultimately stated she still did not believe the paramour sexually abused her children.

The mother was offered visitation throughout the case, but the outcome has been mixed. Although at first the children were happy to see their mother, the

---

[2] As an example, the mother reported having a friend over and using cocaine together. That friend's girlfriend stole the mother's phone and would not give it back. In December 2022, the Family Support Specialist (FSS) worker reported the mother was living with a new paramour and, when she arrived for a visit, the mother had a black eye and blood on her shirt, and her glasses were broken. The mother stated she and her boyfriend were drinking the night before and got into an argument. The mother declined assistance and said she planned to stay in the relationship. Another friend was using methamphetamine and marijuana while staying with her.

[3] Although she denied it, the department believed the relationship continued after the mother moved out and while the paramour was still alive. The paramour still came over to the mother's new apartment. The mother talked to the children about the paramour and sometimes called him during visitation. She continued to wear the paramour's engagement ring and later a necklace containing his ashes around her neck. The department worker testified the children were aware of this. The paramour's obituary named the mother as his fiancée and named the children as well.

department's social worker reported the parent-child interaction is "minimal and uneasy." The children often played by themselves with little involvement or discussion with the mother. The worker observed the mother "does not demonstrate a strong bond with her children and does not comfort them when they have been upset about things going on." The children have struggled with their mother's behaviors. They have expressed that they do not want to go to visitation. The older child in particular is eager to end visitation. The children also demonstrated negative behaviors surrounding the visitations, so the department reduced their frequency from twice to once per week.[4]

The children are doing well in their placement. The younger child has expressed that she wants to stay with the foster family. The mother testified the older child wants to return to her, but he has not expressed that to anyone else. The department's social worker reported both children stated they want to remain in their placement.

In April 2022, the court held the first of two termination trials. At that time, the mother appeared to be making progress. She had an apartment with bedrooms and furniture for the children. She completed a drug treatment program. And she had a job at a hotel. So the court continued the termination hearing for six months to progress toward reunification. In that six-month period, progress stalled, and the court reset the termination petition for trial in October. A second day of trial was held in December.

---

[4] The foster family has been meeting the children's daily needs and providing stability and safety. The children refer to the foster parents as "mom and dad," and another foster child in their home as their "baby sister." Outside her presence, they refer to the mother by her first name.

Throughout the case, the mother also struggled with mental-health concerns. She was ordered to attend therapy but did not start until just before the second day of the second termination trial in December. Other points of progress stalled or reversed: the mother was unemployed. She had not paid rent in six months and was subject to eviction. She had to throw out the furniture she got for the children because of bedbugs brought in when she let a friend stay with her. When asked if she needed housing resources, the mother said she was not interested. She failed to attend Solutions Based Casework sessions and only started therapy just before the termination hearing. She tested positive for cocaine in August. She skipped a test in September, telling the FSS worker it would be positive for cocaine. Although her October sweat patch test was negative for any substances, the FSS worker reported her home was littered with beer and liquor bottles. She was involved with a new paramour who inflicted domestic abuse on her but she indicated she would continue with that relationship.[5]

After the last day of the termination trial, the court found the State proved the grounds for termination under Iowa Code section 232.116(1)(d), (e), and (f) (2022). The mother appeals.

## II. STANDARD OF REVIEW

Our standard of review for termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give careful consideration to the juvenile court's

---

[5] The mother admitted she instigated the conflict when both she and the paramour were intoxicated. The department was not provided this latest paramour's birth date so as to be able to run a record check to see if it was appropriate for him to be around the children. At trial, the mother denied any relationship with this last paramour, any substance abuse, alcohol abuse or domestic abuse, contrary to the documented events in the reports reflected in footnote 2.

factual findings and in-person observations, but we are not bound by them. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). Our top priority is the child's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination). The State has the burden to show clear and convincing evidence that the requirements for termination have been met. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022) (explaining the three-step analysis for termination of parental rights).

## III. DISCUSSION

### A. STATUTORY GROUND

The juvenile court terminated the mother's parental rights on three grounds. We need only find sufficient proof of one ground to affirm. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraph (f).[6] In her discussion of the statutory ground, the mother raises both a substantive element and the reasonable efforts made by the State. We choose to regard those as two separate arguments.

---

[6] Under that section, the court may terminate parental rights if all of the following have occurred:

>  (1) The child is four years of age or older.
>  (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>  (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>  (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(f).

The mother contests only the final element of the statutory ground in paragraph (f),[7] that the children cannot be returned to her custody at the present time. Iowa Code § 232.116(1); *see In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting "at the present time" to mean the date of termination hearing). She argues she was "willing and able to take [the] children back under her care." But the mother was in no position to resume custody of the children on the last day of the second termination trial: she had not paid rent on her apartment in months, she had no employment or transportation, she did not have adequate furniture for the children, and she had not resolved the many safety concerns in the case. She had not remained sober, she continued to associate with inappropriate and unsafe people, and she had not done the requested mental-health treatment. She continued to deny the sexual abuse her children suffered, making their return to her custody untenable for their emotional health. She was in no position to resume custody of the children. So that element of the statutory ground is met.

## B. REASONABLE EFFORTS

The mother also contends that the department did not make reasonable efforts at reunification. *See In re C.B.,* 611 N.W.2d 489, 493 (Iowa 2000) ("[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, [it] . . . impacts the [State's] burden of proving the elements of termination which require reunification efforts."). The department must "make

---

[7] The juvenile court made the following finding in the termination order: "The children are four years of age or younger." Paragraph (f) requires that the children be "four years of age or older." We disregard the court's obvious misstatement. The children are both older than four years.

every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." *Id.* (citation omitted).

The mother raises several complaints about the department's efforts including alleging it focused excessively on services to the paramour, did not provide the mother with a case plan or address a court order for additional services until the permanency hearing, and did not increase visitation to match the mother's progress during 2022.

To begin, the mother does not cite where in the record she made any requests for additional services. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) (finding parents have an obligation to object when they claim services have been inadequate, and that objection must come early enough to make appropriate changes). The court made reasonable efforts findings in the December 2021 review order and the May 2022 permanency order. Nothing in the court's orders shows the mother requested additional services or visitation. Between the May permanency order and the start of the second termination trial in October, there were no motions for reasonable efforts determinations or requests in the record for additional services or visitation. *See id.* (finding a parent's failure to request additional services at the proper time waives the issue on appeal).

In any event, the department's efforts were reasonable. The mother has received a litany of services and offers of other services and support. In particular, the visitation provided matches with the mother's lack of progress in the areas of concern. The department worker reported, "[The mother's] on-going denial of the seriousness of her substance abuse and need to provide a sober environment for the children, is just a part of the reason why her interactions with her children have

not increased in frequency or supervision throughout the case." Also, in the final months before termination, the older child's behaviors surrounding visitations were so troubling, the department reduced visits in his interests. The department's efforts were reasonable.

### C. BEST INTERESTS

Finally, the mother argues that termination is not in the children's best interests because the older child wants to return back to her and they share a strong bond. She also argues she has provided for the children most of their lives, and the person threatening them with sexual abuse has been removed from the household. To determine whether termination is in the children's best interests, we consider their safety, as well as the best placement for furthering their "long-term nurturing and growth" and "physical, mental, and emotional condition and needs." Iowa Code § 232.116(2). For the reasons explained above, the mother is in no position to resume custody of these children in a safe and stable manner. It is true the sexual abusing paramour is no longer in the household, but the lack of protective capacity that led him to abuse the children continues to be a hurdle for the mother. She continues to associate and live with people who threaten her sobriety and her safety and she does not understand why that is an inappropriate environment for the children.

As for the children's wishes, while a proper consideration for the court, the mother's belief the older child wants to return to her conflicts with his general demeanor around her and desire to skip visitations or end them early. *See* Iowa Code § 232.116(2)(b)(2) (permitting consideration of the "reasonable preference of the child, if the court determines that the child has sufficient capacity to express

a reasonable preference"). The department worker testified the mother does not appear to have a bond with the children, and their solo activities and lack of communication during visitations supports that view.

In contrast, the children have done well in their foster family placement. The home is pre-adoptive and by all reports loving and nurturing to their immediate and long-term needs. *See id.* § 232.116(2)(b) (requiring consideration of the child's integration into the foster family and whether the foster family is able and willing to provide a permanent home to the child); *see also In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination). After eighteen months out of the home, the children's best interests will be best served by termination of the mother's parental rights.

**AFFIRMED.**